EVAN R. MOSES, CA Bar No. 198099
evan.moses@ogletree.com
MELIS ATALAY, CA Bar No. 301373
melis.atalay@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
SAINT-GOBAIN GLASS CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALETY AVILA BARNETT, JOSHUA NAPPI, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAINT-GOBAIN GLASS CORPORATION, a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT SAINT-GOBAIN GLASS CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Declarations of Jennifer Perry, Zachary Minute and Melis Atalay in Support of Removal]<br><br>Complaint Filed: July 19, 2024<br>Trial Date:        None |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS ROSALETY AVILA BARNETT AND JOSHUA NAPPI AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant Saint-Gobain Glass Corporation ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). In support of such removal, Defendant states as follows:

## I.    THE STATE COURT ACTION

1.    On July 19, 2024, plaintiffs Rosalety Avila Barnett and Joshua Nappi ("Plaintiffs") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Orange, entitled, *Rosalety Avila Barnett and Joshua Nappi, individually, and on behalf of all others similarly situated, Plaintiffs, v. Saint-Gobain Glass Corporation, a corporation; and Does 1 through 10, inclusive*, Defendants, which was assigned case number 30-2024-01413259-CU-OE-CXC (the "State Court Action"). A true and correct copy of the operative complaint is attached as **Exhibit A**.

2.    The Complaint brings putative class claims for an alleged: (1) Failure to Pay Minimum and Straight Time Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197); (2) Failure to Pay Overtime Wages (Cal. Lab. Code § 1194 and 1198); (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512); (4) Failure to Authorize and Permit Rest Periods (Cal. Lab. Code § 226.7); (5) Failure to Timely Pay All Final Wages (Cal. Lab. Code §§ 201, 202, and 203);(6) Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226(a)); (7) Failure to Indemnify (Cal. Lab. Code § 2802); and (8) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200 *et seq*.).

3.     On July 23, 2024, Defendant, through its agent for service process, received a copy of the Complaint in the State Court Action. Declaration of Melis Atalay ("Atalay Decl.") ¶ 3.

4.     As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders received by Defendant in this action. True and correct copies of the rest of the documents are attached as **Exhibit B** to this Notice of Removal. Atalay Decl., ¶ 3. Defendant has not been served with any pleadings, process, or orders besides those attached. *Id*. Defendant has also not yet responded to the Complaint. Atalay Decl., ¶ 4.

5.     Plaintiffs have not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal.  28 U.S.C. § 1441(a); *McCabe v. General Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987).

6.     <u>This Notice is Timely</u>.  This Notice of Removal is timely as it is filed less than one year from the date this action was commenced and within 30 days of service upon Defendant. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

## II.     <u>THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT</u>

7.     This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453 because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A.     <u>The Size of the Putative Class Exceeds 100</u>

8.     In their Complaint, Plaintiffs define the proposed class as: "All persons who worked for any Defendant in California as an hourly-paid or non-exempt

employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action [January 27, 2020] and ending when notice to the Class is sent." Ex. A, ¶ 25.

9.     Defendant's employment records show that there are hundreds of current and former employees who fall within Plaintiffs' proposed class. From January 27, 2020 to July 31, 2024, (the "Applicable Period"), Defendant has employed at least 289 California non-exempt employees. *See* Declaration of Zachary Minute ("Minute Decl.") ¶ 6.

### B.    The Parties Are Diverse

10.    Citizenship of Plaintiffs and putative class members. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

11.    The Complaint alleges that "Plaintiff Rosalety Avila Barnett is a California resident" and "Plaintiff Joshua Nappi is a California resident". Ex. A, ¶¶ 7-8. Likewise, Defendant's employment records confirm that throughout his employment with Defendant, Plaintiffs lived in the State of California, including the home address that Plaintiffs provided for payroll purposes. Declaration of Jennifer Perry ("Perry Decl.") ¶¶ 8-9. Plaintiffs are citizens of the State of California.

12.    Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. Ex. A, ¶ 25; *see, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiffs were somehow citizens of Pennsylvania or Delaware as is Defendant (and there is no evidence that Plaintiffs are), there is no possible way that the citizenship of hundreds of putative class members, all of whom worked in California (Ex. A, ¶ 25), were also citizens of Pennsylvania or Delaware.

13. <u>Citizenship of Defendant</u>.  Defendant is a corporation. Perry Decl., ¶ 3. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

14.    At all times on or after the date this action was filed, Defendant has been a citizen of the states of Pennsylvania and Delaware within the meaning of the CAFA. Defendant has its principal place of business in Pennsylvania, as that is the primary location in which Defendant's high level management controls and coordinates essential activities for Defendant, including those pertaining to human resources, information technology, and legal. Perry Decl., ¶¶ 4-7. In addition, Defendant was organized in the State of Delaware. *Id*. at ¶ 3. Defendant was neither formed in California, nor does it have a principal place of business in California. *Id.* at ¶¶ 3-7. Accordingly, for purposes of determining diversity, Defendant is regarded as a citizen of Pennsylvania and Delaware, and not a citizen of California.[1]

---

[1]    A number of Defendant's executive functions emanate from Mexico, in addition to Pennsylvania. District courts have CAFA jurisdiction over putative class actions in which any member of a putative class is a citizen of California, and any defendant is a citizen of a foreign state. 28 U.S. Code § 1332(d)(2). Thus, even if Defendant is considered a citizen of Mexico, minimal diversity sufficient for removal still exists. *See, e.g., Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir.2006) (explaining that a limited liability company with members who were citizens of North Carolina and New Zealand was a citizen of North Carolina and New Zealand); *Intec USA, LLC v. Advanced Food Sys., B.V.*, No. 1:08CV379, 2009 WL 801812, at *2 (M.D.N.C. Mar. 25, 2009) (same).

15.     The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998).

16.     Thus, the parties are completely diverse in this matter because Plaintiffs are citizens of California, and Defendant is a citizen of Pennsylvania and Delaware.

**C.    The Amount in Controversy Exceeds an Aggregate of $5,000,000**

17.     Plaintiffs have not alleged a specified amount in controversy in the Complaint. *See generally* Ex. A.

18.     In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

19.     In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013)

(citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

20.    While Defendant denies the validity of Plaintiffs' claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiffs' claims are amenable to classwide treatment, or that Plaintiffs or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

21.    As described further below, as well as in the concurrently-filed declaration from Zachary Minute and Plaintiffs' Complaint, the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

22.    Defendant has not calculated the amount that Plaintiffs have placed into controversy with their eighth claim for alleged unfair competition, nor has Defendant calculated the amount placed into controversy by Plaintiffs' allegation that Defendant's conduct violated Labor Code § 204. Defendant reserves the right to proffer evidence concerning the amounts placed into controversy by these claims in opposition to any remand motion.

## 1.    Defendant's Estimate of the Amount in Controversy

### (a)    The amount placed in controversy by the minimum and overtime wage claim.

23.    In their First and Second Causes of Action, Plaintiffs allege that Defendant failed to pay putative class members all minimum and overtime wages owed for hours worked. Ex. A, ¶¶ 32-50. Plaintiffs' Complaint alleges widespread and regularly-occurring instances of unpaid wages. For instance, through their Complaint, Plaintiffs contend:

- "[T]hroughout the statutory period, Defendants maintained a systematic, company-wide policy and practice of failing to pay employees for all hours worked, including all minimum, straight time, and overtime wages in compliance with the California Labor Code." Ex. A ¶ 4 (emphasis added).

- "Throughout the statutory period, Defendants maintained a <u>policy and practice</u> of not paying Plaintiffs and the Class for all hours worked, including minimum, straight time and overtime wages. Defendants required Plaintiffs and the Class to work "off-the-clock" uncompensated, by for example, requiring Plaintiffs and the Class to continue working during unpaid meals and complete pre-shift duties." Ex. A ¶ 16 (emphasis added).

- "Throughout the statute of limitations period…Defendants <u>systemically</u> failed and refused to pay Plaintiffs and the Class all wages due" Ex. A ¶ 40 (emphasis added).

24.    Labor Code Section 1194(a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

25.    California Labor Code § 510 provides, *inter alia*, that any work in excess of 8 hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay.  Any work a non-exempt employee conducts over 12 hours in one day or 8 hours per day on the seventh consecutive day of work shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

26.    Based on Defendant's records, the approximate number of current and former non-exempt employees who worked for Defendant in California during the Applicable Period ("putative class members") is 289. *See* Minute Decl., ¶ 6. These putative class members worked an aggregate of 27,621 workweeks during the Applicable Period. Minute Decl., ¶ 8. The average hourly rate of the putative class members was at least $17.95 per hour during this period. *Id*. at ¶ 13. Putative class members worked an average of 8.29 hours per shift during the Applicable Period. *Id*. at ¶ 9.

27. **<u>Allegedly Unpaid Minimum Wages:</u>** Based on the above facts and allegations contained in Plaintiff's Complaint, Defendant's calculation of Plaintiff's claims for unpaid minimum wages is **<u>$386,694</u>** ($14.00 x 1 hour x 27,621 workweeks). The computation of the amount in controversy is based on a conservative calculation that the minimum **<u>289</u>** putative class members worked at least **<u>27,621</u>** weeks during the Applicable Period, that each putative class member earned a regular rate of no less than $**<u>14.00</u>** per hour during the Applicable Period, and that each putative class member incurred **<u>one (1) hour</u>** of unpaid minimum wage for every week of work. Minute Decl. ¶¶ 6, 8, 13.

28. An estimate of one hour of unpaid wages for every workweek has been accepted by the federal courts as a reasonable and conservative figure. *See Kincaid v. Educ. Credit Mgmt. Corp.,* No. 2:21-CV-00863-TLN-JDP, 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022) (finding assumption of 1 hour of unpaid minimum wage per week was reasonable given the Complaint's lack of specific allegations to the contrary); *Kastler v. Oh My Green, Inc*., No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (stating that an assumption of 1 hour of unpaid minimum wage per week was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"); *Soto v. Tech Packaging, Inc.,* 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse; *Soto v. Greif Packaging, LLC,* 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Patel v. Nike Retail Servs., Inc*., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy"). This is especially the case where, as here, the plaintiff fails to provide specific allegations

concerning the frequency of which he worked unpaid wages without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

29.     **Overtime Wages**: based on the above facts and allegations contained in Plaintiffs' Complaint, Defendant's calculation of Plaintiffs' claims for unpaid overtime wages is **$1,487,390.85** ($26.925 x 2.0 hours x 27,621 workweeks). The computation of the amount in controversy is based on a conservative calculation that the minimum **289** putative class members worked at least **27,621** weeks during the Applicable Period, that each putative class member earned an average hourly rate of $17.95 during the Applicable Period, and that each putative class member incurred **2.0 hours** of unpaid overtime wage for every week of work.[2]

30.     Defendant's estimate is conservative and reasonable, especially in light of data reflecting that putative class members worked an average of **8.29 hours per day**, which suggests that any time "off-the-clock" would need to be paid at the overtime rate.  Minute Decl., ¶ 9.  Courts have found it reasonable to assume 1.5 hours or more of unpaid overtime per week based on allegations similar to those present in Plaintiffs' Complaint. *See, e.g., Andrade v. Beacon Sales Acquisition, Inc.*, Case No. CV 19-6963-CJC (RAOx) 2019 WL 4855997 (C.D. Cal. Oct. 1, 2019) (one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable based on allegations that the violations occurred "as matters of policy and/or practice"); *Cavada v. Inter-Continental Hotels Group, Inc.*, 2019 WL 5677846

---

[2]     Relying on the average hourly rate of pay is well-accepted for calculating the amount placed into controversy. *See, e.g., Perez v. Qantas Airways Limited*, 2023 WL 9020563 at *5 (C.D. Cal. Dec. 19, 2023) (approving use of average hourly rate of putative class members to calculate amount in controversy on overtime, meal period, and rest period claims); *Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *6-7 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation") (overtime); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *2 (C.D. Cal. Apr. 9, 2019) (meal and rest); "[T]he average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation.

(S.D. Cal. Nov. 1, 2019) (one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable complaint alleged "systematic scheme" to refuse to pay overtime and uniform policy and practice that failed to accurate record overtime worked); *Torrez v. Freedom Mortgage, Corp*., 2017 WL 2713400, at *4 (C.D. Cal. Jun. 22, 2017) (finding that assumption of three hours of unpaid overtime per week was reasonable where complaint contained generic allegations of a failure to pay for all regular and/or overtime wages); *Stanley v. Distrib. Alts*., Inc., No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates").

31.    Consequently, the amount placed in controversy by the unpaid wage claim is at least **$1,874,084.85**

### (b)    The amount placed in controversy by the failure to provide meal periods claim.

32.    In their Third Cause of Action, Plaintiffs allege that Defendant failed to provide putative class members with meal periods or premium payment in lieu thereof. Ex. A, ¶¶ 51-54. Plaintiffs further allege the following with respect to his meal period claims:

- "[T]hroughout the statutory period, Defendants maintained a <u>systematic, company-wide policy and practice of</u>…failing to provide employees with timely and duty-free meal periods in compliance with the California Labor Code and IWC Wage Orders, failing to maintain accurate records of all meal periods taken or missed, and failing to pay an additional hour's pay for each workday a meal period violation occurred." *Id.* at ¶ 4 (emphasis added).

- "Throughout the statutory period, Defendants maintained a <u>policy and practice of</u> …requiring Plaintiff and the Class to continue working during unpaid meal periods." *Id.* at ¶ 16 (emphasis added).

- "Defendants' <u>policy and practice</u> was not to provide meal periods to Plaintiffs and the Class in compliance with California law." *Id.* at ¶ 17 (emphasis added).

- "Defendants regularly failed to provide Plaintiffs and the Class with both meal periods as required by law. By their failure to permit and authorize Plaintiffs and the Class to take all meal periods as alleged above (or due to the fact that <u>Defendants made it impossible or impracticable</u> to take these uninterrupted meal periods), Defendants willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders." *Id.* at ¶ 53 (emphasis added).

As such, Plaintiffs' allegation is that Defendant failed to provide each member of the putative class compliant meal periods as "systematically" and as a matter of "policy and practice".

33.    Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided. Labor Code § 226.7(c). Meal period claims are properly considered in determining the amount in controversy. *See, e.g., Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

34.    When determining the amount placed in controversy by a plaintiff's allegations regarding a common "policy" or "practice" of meal period violations like those alleged by Plaintiffs in the Complaint, the use of a 60% meal period violation rate is both reasonable and conservative. California federal Courts—including this Court—have approved a 100% meal period violation rate when confronted with allegations similar to those present in Plaintiff's Complaint. *See, e.g., Feltzs v. Cox Commc'ns Cal., LLC*, No. 19-2002-JVS-JDEx, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods were sufficient to support a 100% violation rate); *Duberry v. J. Crew Grp., Inc.*, No. 214CV08810, 2015 WL 4575018, at *6 (C.D. Cal. July 28, 2015) (finding allegations of "uniform policy," "systematic scheme," and violations occurring at "all material times" supported 100% violation rate) (citing *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890, 2015 WL 2452755, at *1 (C.D. Cal. May 21, 2015) (finding allegations of "uniform policies, practices and procedures" causing labor law violations supported a 100% violation rate)); *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013

WL 2950600, *11 (N.D. Cal. June 14, 2013) (100% rate approved when "meal break policy resulted in non-exempt employees not receiving meal periods."); *Fischer v. Kelly Services Global*, LLC, 2024 WL 382181 (S.D. Cal., Jan. 31, 2024) (finding 100% violation rate reasonable where complaint alleged common rule prevented the ability to take breaks); *Zepeda v. Mastec Network Sols.*, LLC, No. 18CV00749VAPSHKX, 2018 WL 3222749, at *5 (C.D. Cal. June 29, 2018) (100% violation rate reasonable where complaint alleged "uniform policy and practice" of requiring employees to work through their breaks.).

35.    Based on a review of Defendant's business records, during the Applicable Period, the putative class members worked an aggregate of **124,190** shifts that exceeded five hours in length and received an average hourly rate of at **$17.95**. Minute Decl., ¶¶ 10, 14.

36.    Based on a conservative analysis using a 60% violation rate, Defendant's calculation of Plaintiffs' claim for failure to provide legally compliant meal periods is $1,205,400.48. The computation of the amount in controversy is based on conservative calculations that during the Applicable Period, putative class members worked 124,190 shifts that exceeded five hours in length, that there was a 60% meal period violation rate, and each putative class member earned an average hourly rate of $17.95. Minute Decl., 10, 14.

37.    Consequently, the amount placed in controversy by the Meal Period Claim is **$1,337,526.30** ($17.95 x 124,190 shifts x 0.6).

### (c)    The amount placed in controversy by the failure to provide rest breaks claim.

38.    In their Fourth Cause of Action of the Complaint, Plaintiffs allege that Defendant failed to provide putative class members with rest breaks or premium payment in lieu thereof.  Ex. A, ¶¶ 55-58.

39.    As with their meal break claim, Plaintiffs allege regular and systemic failures to provide rest periods:

- "[T]hroughout the statutory period, Defendants maintained a <u>systematic, company-wide policy and practice</u> of…failing to authorize and permit employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage Orders and failing to pay an additional hour's pay for each workday a rest period violation occurred." *Id.* at ¶ 4 (emphasis added).

- "Defendants <u>regularly</u> required Plaintiffs and the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, uninterrupted, duty-free rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiffs and the Class for rest periods that were not authorized or permitted. Instead, Defendants continued to assert control over Plaintiffs and the Class by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory rest periods, or by denying Plaintiffs and the Class permission to take a rest period. Accordingly, <u>Defendants' policy and practice</u> was to not authorize and permit Plaintiffs and the Class to take rest periods in compliance with California law." *Id.* at ¶ 18 (emphasis added).

- "By their failure to permit and authorize Plaintiffs and the Class to take rest periods as alleged above (<u>or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted rest periods</u>), Defendants willfully violated the provisions of the California Labor Code § 226.7 and the applicable Wage Orders." *Id.* at ¶ 57 (emphasis added).

As such, Plaintiffs' allegation is that Defendant had a policy and/or practice to systemically fail to provide each member of the putative class compliant rest periods. Indeed, Plaintiffs' allegations could reasonably be interpreted to suggest that Defendant *never* complied with the law. Ex. A, ¶¶ 4, 18, 57.

40.     Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1029 (2012). Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

41.     Based on a review of Defendant's business records, during the Applicable Period, the putative class members worked an aggregate of **125,353** shifts that

Case No.

NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

exceeded 3.5 hours in length and received an average hourly rate of at **$17.95**. Minute Decl., ¶¶ 11, 14.

42.     Based on a conservative analysis using a 60% violation rate, Defendant's calculation of Plaintiffs' claim for failure to provide legally compliant rest periods is **$1,350,051.81**. The computation of the amount in controversy is based on conservative calculations that during the Applicable Period, putative class members worked 125,353 shifts that exceeded 3.5 hours in length, that there was a 60% rest period violation rate, and each putative class member earned an average hourly rate of $17.95. Minute Decl., ¶¶ 11, 14.

43.     Courts accept an assumed 100% rest period violation rate when there are allegations of widespread failures to provide rest periods, as there are here. *See, e.g., Sanchez v. Russell Sigler, Inc*., 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (accepting a 100% rest period violation rate where plaintiff "alleges that 'at all material times,' Defendant failed to provide putative class members with uninterrupted meal and rest periods"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (approving 100% rest period violation rate where plaintiff alleges that Defendant maintained uniform policies, practices, and procedures that caused violation of California's rest period laws"); *Dawson v. Hitco Carbon Composites, Inc.*, 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016) (approving 100% rest period violation rate based on allegation that "[a]t all material times," Defendant failed to provide the requisite uninterrupted meal periods and rest periods"); *Feltzs v. Cox Commc'ns Cal., LLC*, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate).

44.     Nonetheless, and even though the Complaint contends that had a policy and practice to systemically deny rest periods, Defendant conservatively assumes a 60% rest period violation rate.

45.     Consequently, the amount placed in controversy by the Rest Period Claim is at least **$1,350,051.81** ($17.95 x 125,353 x 0.6).

> **(d)** **The amount placed in controversy by the waiting time penalty claim.**

46.      In support their Fifth Cause of Action, Plaintiffs allege that "[t]hroughout the statutory period, Defendants willfully failed and refused to timely pay Plaintiffs and the Class all final wages due at their termination of employment. In addition, Plaintiffs' final paychecks did not include payment for all expenditures, minimum wages, straight time wages, overtime wages, meal period premium wages, and rest period premium wages owed to them by Defendants at the conclusion of their employment. On information and belief, Defendants' failure to pay Plaintiffs' final wages when their employment terminated was not a single, isolated incident, but was instead consistent with Defendants' policy and practice that applied to Plaintiffs and the Class." Ex. A, ¶¶ 19, 59-65.

47.      Plaintiffs' Complaint expressly seeks 30 days of wages as a penalty.  Ex. A, ¶ 64. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonwork days," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id*. at 493.

48.      Given the allegations of Plaintiffs' Complaint, it is reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at putative class members' daily wage rate. *See, e.g., Mackall v. Healthsource Global Staffing, Inc*., 2016 WL 4579099, at *5-*6 (N.D. Cal. Sept. 2, 2016) (approving 100% violation rate in calculating waiting time penalties on removal which are based on allegation that Defendant had a "pattern and practice" to not pay overtime wages due; *De Vega v. Baxter Healthcare Corp*., 507 F. Supp. 3d 1214, 1218 (N.D. Cal. 2019)

(holding that assumed maximum waiting time penalties "was completely reasonable"; "If the gravamen of the allegation were that Baxter was sometimes tardy in providing final paychecks, then indeed it would not be reasonable to assume that nearly all employees did not get their final paychecks for 30 or more days. De Vega's theory, however, plainly is that putative class members were owed (and are still owed) pay for overtime and missed meal and rest breaks, even if their final paychecks were otherwise timely delivered. Thus, it is completely reasonable to assume waiting time penalties accrued to the thirty-day limit because of those unpaid sums"); *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. July 10, 2014) (same; CAFA amount in controversy satisfied in part by waiting time penalties; "Assuming a 100% violation rate is thus reasonably grounded in the complaint....Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less than the statutory maximum."); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 906, 912 (N.D. Cal. 2016) (approving assumption on removal that each employee would be entitled to maximum statutory penalty for 30 days).

49.  Based on a review of Defendant's business records, at least **136** non-exempt California employees have separated employment with Defendant during the relevant statutory period of January 27, 2021. *See* Minute Decl., ¶ 7. These employees earned an average base hourly rate of **$18.33** and worked an average shift length of **8.33**, which is equal to a daily rate of pay of at least $155.71 ((8 hours x $18.33) + (0.33 hours x $27.495)). *See* Minute Decl., ¶¶ 9, 14.

50.  Defendant's calculation of Plaintiffs' claim for waiting time penalties for failure to timely pay all wages upon termination results in exposure of $603,504.90 ($155.71 average daily rate x 30 days x 136 former employees).

51.  Consequently, the amount placed in controversy by the waiting time penalties claim is **$625,296.80**

**(e)** **The amount placed in controversy by the failure to provide accurate wage statements.**

52. Plaintiffs allege that Defendant failed to provide accurate wage statements as required by California Labor Code section 226 *et seq.* Ex. A, ¶¶ 66-73. Plaintiffs brings various theories in support of their inaccurate wage statement claim, including that "Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements. These deficiencies include, among other things, the failure to correctly identify the gross wages earned by Plaintiffs and the Class, the failure to list the true "total hours worked by the employee," and the failure to list the true net wages earned." *Id.* at ¶ 68.

53. In part, Plaintiffs' wage statement claim is derivative of their allegations that "throughout the statutory period", Defendant had a policy and practice to systematically deny putative class members the opportunity to take meal and rest periods and a policy and practice to pay for off-the-clock work. In other words, the Complaint alleges that wage statements were inaccurate for each pay period in which a putative class member worked off-the-clock or was unable to take just one meal or rest period. Thus, the Complaint alleges Defendant consistently and regularly provided Plaintiffs and putative class members inaccurate wage statements. In fact, the Complaint can be reasonably interpreted as alleging that every wage statement issued during the Applicable Period was inaccurate especially given the allegation that wage statements did not provide for the employer name or address, *i.e.*, a 100% violation rate.

54. Section 226(e) provides penalties for inaccurate wage statements as follows: the "greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)".

55.    An estimated 100% wage statement violation rate for purposes of removal is reasonable in light of the allegations in Plaintiffs' Complaint. *See, e.g., Baker v. Propak Logistics*, Inc., 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019); *Mendoza v. Nat'l Vision, Inc*., 2019 WL 2929745, at *6 (N.D. Cal. July 8, 2019) (approving of 100% wage statement violation rate where plaintiff's complaint alleged that "throughout the relevant period," Defendant "issued "wage statements [that] inaccurately report the number of hours worked, the number of overtime hours worked, gross wages earned, net wages earned and deductions"); *Gipson v. Champion Home Builders, Inc.*, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period).

56.    Defendant's conservative calculation of Plaintiffs' claim for non-compliant wage statements is $321,300. Since January 27, 2023, at least **102** putative class members were issued no less than **32** wage statements each, entitling each such individual to ($50 x 1 wage statement) + ($100 x 31 wage statements) = $3,150. Minute Decl.¶ 12. Though at least 183 putative class members received wage statements since January 27, 2023, Defendant has only calculated the amount in controversy by examination of the 102 putative class members who received at least 32 wage statements. Minute Decl.¶ 12. Defendant reserves the right to provide additional evidence and argument concerning the remaining 81 putative class members in any remand opposition.

57.    Consequently, the amount placed in controversy by the Inaccurate Wage Statement is at least **$321,300** ($3,150 x 102 employees).

(f)    **The amount placed in controversy by the expense reimbursement claim.**

58.    In his Seventh Cause of Action, Plaintiffs allege that they and putative class members were not reimbursed for business expenses that they were required to incur in violation of California Labor Code § 2802. Ex. A ¶¶ 74-78. Specifically, in

Case No.

support of this claim, Plaintiffs allege that "[t]hroughout the statutory period, Defendants have wrongfully required Plaintiffs and the Class to pay expenses that they incurred in direct discharge of their duties for Defendants. Plaintiffs and the Class regularly paid out-of-pocket for necessary employment-related expenses, including, without limitation, work attire and equipment, and use of personal cell phone [sic] for work related purposes. Plaintiffs and the Class incurred substantial expenses as a direct result of performing their job duties for Defendants, but Defendants failed to indemnify Plaintiffs and the Class for these employment-related expenses." *Id.* at ¶¶ 21-22.

59.  Labor Code § 2802 provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties..."

60.  Based on the above facts and allegations contained in Plaintiffs' Complaint, Defendant's calculation of Plaintiffs' claims for unreimbursed business expenses is $138,105 ($5.00 x 27,621 workweeks). The computation of the amount in controversy is based on a conservative calculation that the minimum **289** putative class members worked at least **27,621** weeks during the Applicable Period, that each putative class member incurred **$5.00** of unreimbursed business expenses per week.

61.  Defendant's calculation of conservative and reasonable, especially given the Complaint's allegation that Defendant failed to reimbursed putative class members and given the allegations of "substantial" expenses, like clothing and equipment. *See, e.g., Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348 (S.D. Cal., June 29, 2021) (approving assumption of $25 per month incurred by putative class member for allegation that the defendant failed to reimburse for putative class members for their use of personal cell phones and personal vehicles); *Evers v. La-Z Boy Inc.*, 2022 WL 2966301 (S.D. Cal., July 27, 2022) (applying $24/month for allegedly unreimbursed personal cell phone expenses).

62.     Consequently, the amount placed in controversy by the unreimbursed expense claim is at least **$138,105.**

**(g)     Attorneys' fees further increase the amount in controversy.**

63.     When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("We conclude that if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy."); *Muniz*, 2007 WL 1302504 at *3 ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiffs on all claims made in the complaint."). The Court may consider all attorneys' fees that at the time of removal can reasonably be anticipated will be incurred over the life of the case. *See Fritsch*, 889 F.3d at 794 ("Because the law entitles [Plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Goldberg v. CPC Int'l*, 678 F.2d 1365, 1367 (9th Cir. 1982); *Haase v. Aerodynamics Inc.*, 2009 WL 3368519, at *5; *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n.4 (N.D. Cal. 2002).

64.     Under the Ninth Circuit's well-established precedent, twenty-five (25) percent of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Barcia v. Contain-A-Way, Inc.,* No. 07cv938 IEG JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (*quoting Hopson v. Hanesbrands Inc.,* 2008 WL 3385452, at *4 (N.D. Cal. Aug. 8, 2008)); *Lucas v. Michael Kors Inc.*, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting

cases applying a 25% benchmark in CAFA wage and hour cases). Additionally, courts have accepted estimates of 25%, especially where the "[p]laintiff does not raise any factors counseling against the application of the 25% benchmark …" *Cortez v. United Nat. Foods, Inc.*, 2019 WL 955001, at *7 (N.D. Cal. Feb. 27, 2019); *see also Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019) (same).

65.     Here, Plaintiffs claim that they are entitled to attorneys' fees under the California Labor Code. *See* Ex. A, Prayer for Relief pp. 21-25. The Complaint also seeks attorneys' fees for each of the claims used in support of this removal notice. *Id.* at ¶¶ 41, 49, 65, 73, 78; Prayer for Relief ¶¶ 8, 13, 18, 23, 28, 34, 39.

66.     Defendants have established the total amount in controversy, exclusive of attorneys' fees is $5,499,259.76. In other words, the amount in controversy exclusive of attorneys' fees already exceeds the minimum jurisdictional threshold. Plaintiffs have not indicated they will seek less than twenty-five (25) percent of a common fund in attorneys' fees. Moreover, Plaintiffs have not alleged any factors meriting departure from the 25% benchmark in wage and hour cases. Defendant denies any such attorneys' fees are owed to Plaintiffs or putative class members. However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiffs' allegations that the attorneys' fees are owed. Given the valuation of this matter, the attorneys' fees portion is valued at $1,374,814.94 and also supports this removal.

67.     Consequently, the amount placed in controversy by Plaintiffs' request for attorneys' fees is at least $1,374,814.94($5,499,259.76 x 25%).

### (h)   Summary of Defendant's calculations.

68.     As described above, a conservative estimate of the amount in controversy presented by Plaintiffs' minimum wage, overtime wage, meal period, rest period, waiting time penalties, expense reimbursement, and wage statement claims exceed the jurisdictional minimum of $5,000,000. These six claims (along with attorneys' fees) have placed at least $7,046,705.95 in controversy, summarized as follows:

| Claim | Estimated Exposure |
|-------|-------------------|
| Unpaid Wages | $1,874,084.85 |
| Meal Period | $1,337,526.30 |
| Rest Period | $1,350,051.81 |
| Waiting Time Penalties | $625,296.80 |
| Expense Reimbursement | $138,105 |
| Inaccurate Wage Statements | $312,300 |
| Sub-Total | $5,637,364.76 |
| Attorneys' Fees | $1,409,341.19 |
| **Total** | $7,046,705.95 |

69.   Consequently, the amount placed in controversy by Plaintiffs' claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## III.   DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

70.   <u>Venue is Proper</u>.  In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of Orange is located within the Central District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

71.   In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

72.   In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiffs, and a notice will be filed with the Clerk of the Superior Court of California for the County of Orange. Notice of compliance shall be filed promptly afterward with this Court.

73.    As required by Federal Rule of Civil Procedure rule 7.1, Defendant has concurrently filed its Certificate of Interested Parties and Disclosure Statement.

74.    Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes this action to this Court.


DATED:  August 22, 2024              OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.



By:  /s/ Melis Atalay
                                              Evan R. Moses
                                              Melis Atalay

Attorneys for Defendant
SAINT-GOBAIN GLASS CORPORATION

Case No.
NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT
63694806.v1-OGLETREE