1  EVAN R. MOSES, CA Bar No. 198099
   evan.moses@ogletree.com
2  MELIS ATALAY, CA Bar No. 301373
   melis.atalay@ogletree.com
3  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
4  400 South Hope Street, Suite 1200
   Los Angeles, CA  90071
5  Telephone:    213-239-9800
   Facsimile:    213-239-9045
6
7  Attorneys for Defendant
   SAINT-GOBAIN GLASS CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALETY AVILA BARNETT, JOSHUA NAPPI, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAINT-GOBAIN GLASS CORPORATION, a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DECLARATION OF ZACHARY MINUTE IN SUPPORT OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Declarations of Jennifer Perry and Melis Atalay in Support of Removal]<br><br>Complaint Filed:   July 19, 2024<br>Trial Date:             None |

# DECLARATION OF ZACHARY MINUTE

I, Zachary Minute, declare and state as follows:

1. I am currently Data Analytics Manager, Labor and Employment of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("the firm"), counsel of record for defendant Saint-Gobain Glass Corp. ("SGG" or "Defendant") in the above-captioned case. I make this declaration in support of SGG's Notice of Removal of Civil action to the United States District Court. I have personal knowledge of all of the facts set forth below, and if called upon to testify to the same, I could and would do so competently and truthfully.

2. In my role as Data Analytics Manager, I oversee the Data Analytics employee group, including our work performing analyses of client timekeeping, payroll, and personnel data for attorneys at Ogletree for various wage-and-hour class action litigation matters.

3. In this role, I am a member of Ogletree's Data Analytics group, which uses advanced economic and statistical techniques and electronic tools, along with expertise in database construction and analysis, to analyze client data to assist attorneys at Ogletree in their defense of client employment matters, both pre-litigation and during litigation. The team members of Ogletree's Data Analytics group collectively have over 75 years of experience analyzing client data to model potential damages in wage-and-hour class actions, developing statistical metrics measuring pay equity, analyzing the impacts of reductions in force, and preparing affirmative action plans.

4. I hold a Bachelor of Science degree in Physics, with a minor in Mathematics, from Truman State University in Kirksville, Missouri, and I achieved passing grades on Exams P and FM under the Society of Actuaries. I have prepare economic and statistical analyses for numerous Fortune 500 companies on economic and statistical questions in litigation involving employment discrimination, FLSA and state wage-and-hour matters, EEOC/OFCCP investigations, damages calculations, executive compensation, and statistical sampling. As a data, math, and statistics expert, I have worked on matters all over the country. Prior to joining Ogletree, I worked as a statistician at Jackson Lewis, P.C., another law firm representing management in employment litigation matters. My work has been used for litigation, mediation, arbitration, and various consulting settings. Prior to working with Jackson Lewis, P.C., I worked as an Actuarial Analyst, preparing government forms,

economic modeling, financial forecasts, and calculations of specific pension benefit administration figures for retirement benefits from pensions to executive compensation for termination, early retirement, standard retirement, and late retirement in accordance with PPA/ERISA regulations using GAAP Accounting methods and required pension plan funding standards.

5. In connection with this class action litigation, I was asked by counsel for Defendant, Melis Atalay, to review data received from SGG pertaining to its current and former California non-exempt employees (the "putative class members"). Specifically, I was provided with and asked to review data pertaining to payroll and time punch records of the putative class members between January 27, 2020 to July 31, 2024 ("the Records").

6. Based on my review of the Records, I determined that there are at least 289 putative class members who worked at any time for SGG between January 27, 2020 and July 31, 2024 ("the Applicable Period"). I made this determination by aggregating the time punch records of the putative class members for the Applicable Period that was contained in various spreadsheets and then taking a unique count of the employees. I further restricted the putative class members to include only those who were listed in both the time and pay records.

7. Based on my review of the Records, I determined that since January 27, 2021, 136 putative class members terminated their employment on or before July 31, 2024. I made this determination by taking the aggregated time and pay records for the putative class members since January 27, 2021, then identifying any putative class members who received pay for time worked since January 27, 2021 but did not work for at least 6 pay periods from the end of the payroll data (July 31, 2024)..

8. Based on my review of the Records, I determined that the putative class members worked at least 27,621 workweeks during the Applicable Period. I made this determination by taking the aggregated time records for the putative class members during the Applicable Period that were contained in various spreadsheets and identifying unique weeks per putative class member in which work was performed. Any week in which a putative class member recorded time worked was considered part of this count.

9. Based on my review of the Records, I determined that the putative class members worked an average shift of 8.29 hours during the Applicable Period. I made this determination by taking the aggregated time records for the putative class members during the Applicable Period that were contained in various spreadsheets, identifying unique shifts per putative class member and date, calculating the total shift length for each shift, and then averaging the shift lengths across the Applicable Period. Total shift length was determined by calculating the hours between each punch in and punch out for a given shift, and any break in punch times greater than 4 hours was assumed to be the next shift. Based on my review of the Records, I further determined that putative class members worked an average shift length of 8.33 hours between January 27, 2021 and July 31, 2024. I made this determination by using the methodology as with determining the average shift length during the Applicable Period, but using a different relevant timeframe of January 27, 2021 and July 31, 2024.

10. Based on my review of the Records, I determined that the putative class members worked at least 124,190 shifts exceeding five hours during the Applicable Period. I made this determination by taking the aggregated time records for the putative class members during the Applicable Period that was contained in various spreadsheets, identifying unique shifts per putative class member and date, and then calculating the total shift length for each shift. Total shift length was determined by calculating the hours between each punch in and punch out for a given shift, and any break in punch times greater than 4 hours was assumed to be the next shift. Any total shift length that exceeded 5.0 hours was considered part of this count.

11. Based on my review of the Records, I determined that putative class members worked at least 125,353 shifts exceeding 3.5 hours during the Applicable Period. I made this determination by taking the aggregated time records for the putative class members during the Applicable Period that was contained in various spreadsheets, identifying unique shifts per putative class member and date, and then calculating the total shift length for each shift. Total shift length was determined by calculating the hours between each punch in and punch out for a given shift and any break in punch times greater than 4 hours was assumed to be the next shift. Any total shift length that exceeded 3.5 hours was considered part of this count.

12. Based on my review of the Records, I determined that at least 102 putative class members received at least 32 wage statements from January 27, 2023 to July 31, 2024. Further at least 183 putative class members received at least one wage statement between January 27, 2023 to July 31, 2024. I made these determinations by reviewing pay data received from SGG concerning the dates during which pay was made to each of the putative class members between January 27, 2023 to July 31, 2024

13. Based on my review of the Records, I determined that putative class members who worked during the Applicable Period received a minimum wage rate of $14.00. I made this determination by taking the aggregated pay records for the putative class members during the Applicable Period that was contained in various spreadsheets, analyzing the various hourly rates of pay for which putative class members were paid, and determining the applicable minimums during each time range listed above.

14. Based on my review of the Records, I further determined that the putative class members who worked during the Applicable Period received an average hourly rate of pay of $17.95. Finally, I determined that the putative class members who worked from January 27, 2021 to July 31, 2024 received an average hourly rate of pay of $18.33. I received the minimum wage rate earned during the Applicable Period for each of the putative class members. I then calculated the average hourly rate by weighting that rate by the number of wage statements per person

15. My analyses, observations and opinions contained in this declaration are based upon information available to date. I reserve the right to supplement and/or revise my opinion and this declaration in response to any further information provided by the parties and/or in light of additional documents or testimony, which may be brought to my attention after the date of my signature below.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on this 22st day of August, 2024, at Denver, Colorado.

_____
ZACHARY MINUTE